EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
GOLDEN LAW
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA; [FIRST | ) |
| NAME UNKNOWN] CALVERT, in his | ) |
| individual capacity, | ) |
| | ) |
| Defendants. | ) |

### INTRODUCTION

1.     C.C. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for nearly one year.

2.     While housed at FCI Dublin, Plaintiff C.C. faced constant sexual harassment, culminating in multiple instances of sexual abuse.

3.     Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4. Plaintiff C.C. is experiencing long-lasting traumatization.

**JURISDICTION AND VENUE**

5. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff C.C. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

**PARTIES**

9. Plaintiff C.C. was at all times relevant hereto incarcerated in Federal Correctional Institute Dublin ("FCI Dublin").

10. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of FCI Dublin. FCI Dublin was a federal female low-security correctional institution.

11. Defendant [First Name Unknown] Calvert was a Correctional Officer at FCI Dublin. He is sued in his individual capacity.

12. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff C.C. Plaintiff C.C. was dependent upon Defendant United States for his personal security and necessities.

13. In performing the acts and/or omissions contained herein, Defendant Calvert, and other correctional officers including Nicholas Theodore Ramos, Officer Henry, Officer Bartolo, and Officer Naryan, acted under color of federal law, and Plaintiff C.C. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with

*C.C. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 2

deliberate indifference to the rights and personal security of Plaintiff C.C. Defendant United States knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff C.C. and to his constitutionally and statutorily protected rights. Despite this knowledge, Defendants United States and its employees failed to take steps to protect Plaintiff C.C. and to ensure his rights to safety from sexual abuse.

**FACTS**

14. Plaintiff C.C. is a transgender man who was incarcerated at FCI Dublin from June 2023 until the closing of the facility in April 2024.

15. While at FCI Dublin, Plaintiff C.C. experienced sexual harassment, sexual abuse, neglect, and retaliation, the last of which remains ongoing and persistent.

16. Towards the beginning of Plaintiff C.C.'s time at FCI Dublin, in about August 2023, Plaintiff C.C. was placed in the Special Housing Unit ("SHU") alone.

17. This happened even though he had an alert that, for his mental health, he should not be celled alone.

18. He was denied a cup for water and could not drink for 36 hours. He was also denied recreation and fresh air.

19. He became mentally unwell and worried he might try to kill himself.

20. He reported this to Officer Naryan, who did nothing to intervene.

21. Shortly thereafter, Plaintiff C.C., struggling with his mental health and not receiving the level of care he needed, tied a sheet around his neck and tried to hang himself.

22. Officer Naryan saw him in this state, laughed, and then left again.

23. Plaintiff C.C. started screaming for help.

24. Eventually, his screams resulted in an all-staff code being called, and Plaintiff C.C. was seen by a medical professional.

25. When Plaintiff C.C. was housed in a main unit, Officer Calvert was the housing officer.

26. He had the prisoners call him "Daddy Calvert," and he had a reputation as an officer who liked to leer at prisoners' naked bodies.

27. In late 2023, Defendant Calvert encountered Plaintiff C.C. and another prisoner having sex.

28. Plaintiff C.C. could have been sent to the Special Housing Unit ("SHU") for this conduct, but Defendant Calvert did not write him up.

29. Instead, he stood and watched for his own sexual gratification.

30. Defendant Calvert did not send Plaintiff C.C. to the SHU, but Plaintiff C.C. feared that he could turn on him at any minute and punish him or retaliate against him if he did not do as Officer Calvert said.

31. After that encounter, Defendant Calvert went into Plaintiff C.C.'s cell frequently when he suspected he was naked or changing, and if he caught Plaintiff C.C. naked, he would linger and leer at his breasts and genitals.

32. On or about January 4, 2024, Defendant Calvert allowed Plaintiff C.C. to have visitors in the unit from other units for a celebration.

33. Afterwards, he told Plaintiff C.C. that he owed him and that he knew what Defendant Calvert wanted, indicating that he wanted to see Plaintiff C.C. and the other prisoner have sex again.

34. That evening, he came to Plaintiff C.C.'s cell, opened the door, and watched as Plaintiff C.C. and the other prisoner had oral and digitally penetrative sex.

35. Plaintiff C.C. did not believe he could say no or refuse Defendant Calvert.

36. He did not feel like he could report this incident to staff.

37. He had seen other prisoners report misconduct and be immediately retaliated against by having their rooms destructively searched and their personal property seized.

38. In addition to Defendant Calvert, Plaintiff C.C. was sexually harassed by other officers, including Officer Ramos, Officer Henry, Officer Bartolo, Officer Naryan, and another officer who went by "Officer B".

39. These officers would make derogatory comments about Plaintiff C.C.'s body and transgender identity.

40. Officer Ramos would also leer at Plaintiff C.C.'s naked body. He frequently looked through Plaintiff C.C.'s cell door window when he was changing, after the shower, or when he would be using the bathroom.

41. Officer Bartolo sexually assaulted Plaintiff C.C.'s friend, another transgender male prisoner. After she assaulted the other prisoner, she started to perform destructive searches on Plaintiff C.C.'s room, throwing out his permitted property and making comments to suggest that this was being done as retaliation.

42. She antagonized Plaintiff C.C. by intentionally misgendering the transgender male prisoner she sexually abused and telling Plaintiff C.C. things that the other prisoner purportedly said in order to instigate tension or a fight between the two.

43. Her efforts were unsuccessful, but they caused Plaintiff C.C. tremendous discomfort and distress.

44. Plaintiff C.C. was transferred from FCI Dublin when the facility closed.

45. He arrived at Federal Medical Center ("FMC") Carswell on or about April 25, 2024. When he arrived, he was labeled a "Dublin girl" and suffered retaliation.

46. On or about August 5, 2024, Plaintiff C.C. was placed in the SHU pending investigation.

47. He was not given an explanation for his placement.

48. After he had been there for approximately 12 days, he was placed on contraband surveillance watch or "dry cell".

49. At the beginning, he was taken to an upstairs area that seemed abandoned or not frequently used, and he was stripped and forced to expose his genitals to a Lieutenant, an SIS investigator, and the medical director.

50. He was worried that being taken to this seemingly abandoned room meant that he was going to be sexually abused or beaten.

51. They directed his actions and told him to spread his labia further and further to allow them an opportunity to look in his vagina.

52.    During the procedure, the medical director placed a hand on his leg near his vagina. He objected, but the medical director and officers dismissed him.

53.    After he was on contraband surveillance watch for a day and a half and had given three bowel movements, he should have been removed.

54.    However, he was retained on contraband surveillance watch for three and a half more days.

55.    He was provided with a smock that was too large and exposed his breasts.

56.    He was observed by male officers, which was against policy.

57.    In order to get attention for his plight and over-detention on contraband surveillance watch, he had to go on hunger strike for nearly three days.

58.    Plaintiff C.C. understood that if he missed nine meals, it would have to be reported to the regional office, which would send someone to speak with him.

59.    Just before he missed his ninth meal, he was released back to the SHU.

60.    In February of 2025, he was finally served with a disciplinary write-up.

61.    When he went to a hearing on or about February 20, 2025, it was expunged. Despite that, he remained in the SHU until on or about March 21, 2025, when he was transferred out of FMC Carswell.

62.     Most of the time that Plaintiff C.C. was housed at FMC Carswell, he was in the SHU, which he understood as punishment for being a "Dublin girl".

63.    Plaintiff C.C. is dealing with persistent mental health issues, including anxiety and depression, and the retaliation he experiences from being perceived as a "Dublin girl" has only exacerbated his mental health issues.

**EXHAUSTION**

64.    On May 8, 2025, Plaintiff C.C., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

65.    The BOP acknowledged receipt on May 29, 2025.

66.    On February 6, 2026, Plaintiff C.C., through counsel, mailed an amended administrative claim under the FTCA to the BOP's Western Regional Office.

67. The BOP denied Plaintiff C.C.'s claim on March 3, 2026.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.4)**

68. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

69. Plaintiff C.C. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees, Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan.

70. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

71. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

72. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

73. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

74. Defendant Calvert discriminated against Plaintiff C.C. based on his gender when he repeatedly sexually abused him by physically subjecting him to sexual acts.

75. By these acts, Defendant Calvert caused Plaintiff C.C. physical, mental, and emotional injuries as well as injury to his personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant Calvert)**
**(Cal. Civ. Code § 52.4)**

76. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

77. Plaintiff C.C. brings this claim for gender violence under California Civil Code § 52.4 against Defendant Calvert.

78. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

79. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

80. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

81. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

82. Defendant Calvert discriminated against Plaintiff C.C. based on his gender when he repeatedly sexually abused him by physically subjecting him to sexual acts.

83. By these acts, Defendant Calvert caused Plaintiff C.C. physical, mental, and emotional injuries as well as injury to his personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

84. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

85. Plaintiff C.C. brings this claim for sexual assault under the Federal Tort Claims Act for violation of Plaintiff's rights established by California common law against the United States based on the conduct of its employees, Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan.

86. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

87. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

88. Defendant Calvert violated Plaintiff C.C.'s right to be free from sexual assault by repeatedly sexually abusing him while he was incarcerated.

89. Defendant Calvert's sexual abuse of Plaintiff C.C. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

90. Defendant Calvert subjected Plaintiff C.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.C.'s person.

91. By intentionally subjecting Plaintiff C.C. to sexual acts, Defendant Calvert acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

92. By repeatedly subjecting Plaintiff C.C. to sexual acts, Defendant Calvert caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant Calvert)**
**(California Common Law)**

93. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

94. Plaintiff C.C. brings this claim for sexual assault for violation of Plaintiff's rights established by California common law against Defendant Calvert.

95. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

96. Defendant Calvert violated Plaintiff C.C.'s right to be free from sexual assault by repeatedly sexually abusing him while he was incarcerated.

97. Defendant Calvert's sexual abuse of Plaintiff C.C. was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

98. Defendant Calvert subjected Plaintiff C.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.C.'s person.

99. By intentionally subjecting Plaintiff C.C. to sexual acts, Defendant Calvert acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

100. By repeatedly subjecting Plaintiff C.C. to sexual acts, Defendant Calvert caused him to suffer physical, mental, and emotional injuries, as well as injuries to his personal dignity.

**FIFTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 1708.5)**

101. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

102. Plaintiff C.C. brings this claim for battery under the Federal Tort Claims Act based on California Civil Code section 1708.5 against the United States for the conduct of its employees, Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan.

103. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

104. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

105. Defendant Calvert committed battery against Plaintiff C.C. by repeatedly sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

106. The sexual abuse of Plaintiff C.C., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

107. Defendant Calvert subjected Plaintiff C.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.C.'s person.

**SIXTH CLAIM FOR RELIEF**
**SEXUAL BATTERY**
**(against Defendant Calvert)**
**(Cal. Civ. Code § 1708.5)**

108. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

*C.C. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 10

109. Plaintiff C.C. brings this claim for sexual battery based on California Civil Code section 1708.5 against Defendant Calvert.

110. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

111. Defendant Calvert committed sexual battery against Plaintiff C.C. by repeatedly sexually abusing him while he was incarcerated as a minimum-security prisoner at FCI Dublin.

112. The sexual abuse of Plaintiff C.C., a prisoner, was deeply offensive to his personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

113. Defendant Calvert subjected Plaintiff C.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.C.'s person.

**SEVENTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

114. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

115. Plaintiff C.C. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employees, Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan.

116. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

117. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

118. Defendant Calvert engaged in outrageous conduct by repeatedly subjecting Plaintiff C.C. to sexual acts while he was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff C.C. and his power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

119. Defendant Calvert's sexual abuse caused Plaintiff C.C. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

120. Defendant Calvert intended to cause Plaintiff C.C. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

**EIGHTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant Calvert)**
**(California Common Law)**

121. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

122. Plaintiff C.C. brings this claim for the intentional infliction of emotional distress against Defendant Calvert.

123. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

124. Defendant Calvert engaged in outrageous conduct by repeatedly subjecting Plaintiff C.C. to sexual acts while he was incarcerated as a prisoner in his employer's custody. He abused his authority over Plaintiff C.C. and his power to affect him in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

125. Defendant Calvert's sexual abuse caused Plaintiff C.C. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

126. Defendant Calvert intended to cause Plaintiff C.C. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

///
///
///

**NINTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

127.    Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    Plaintiff C.C. was in the custody and control of the United States during all relevant times.

129.    Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

130.    Defendant Calvert violated Plaintiff C.C.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

131.    Defendant United States, by the actions of its employees, Defendant Calvert and other officers including Ramos, Henry, Bartolo, and Naryan, interfered with Plaintiff C.C.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; his rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; his right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse, and his right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

132.    As a proximate result of these acts, Plaintiff C.C. sustained damage and injury.

///

///

///

**TENTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

133. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

134. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

135. Defendant Calvert knowingly recruited, enticed, and solicited Plaintiff C.C. by offering benefits and things of value, such as not being placed in the SHU or transferred to another prison, for engaging in sex acts.

136. Defendant Calvert made Plaintiff C.C. engage in sex acts through force and coercion.

137. Defendant United States knew of, or should have reasonably known, that Defendant Calvert was soliciting Plaintiff C.C. in exchange for sex acts, and benefited by failing to protect Plaintiff C.C.

138. This conduct has caused Plaintiff C.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and he has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

139. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

140. Defendant Calvert knowingly recruited, enticed, and solicited Plaintiff C.C. by offering benefits and things of value, such as not receiving a shot, for engaging in sex acts.

141. Defendant Calvert made Plaintiff C.C. engage in sex acts through force and coercion.

142. Defendant United States knew or should have known that Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan, were engaged in these activities and

intentionally placed Plaintiff C.C. at greater risk of harm and/or failed to act in a manner that protected Plaintiff C.C. from harm.

143. Defendant United States employed Defendant Calvert, and other officers, including Ramos, Henry, Bartolo, and Naryan, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

144. This conduct has caused Plaintiff C.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

### TWELFTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Defendant Calvert)
### (Cal. Civ. Code § 52.5)

145. Plaintiff C.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

146. Plaintiff C.C. has a nonfrivolous argument that Defendant Calvert bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

147. Defendant Calvert knowingly recruited, enticed, and solicited Plaintiff C.C. by offering benefits and things of value, such as not receiving a shot, for engaging in sex acts.

148. Defendant Calvert made Plaintiff C.C. engage in sex acts through force and coercion.

149. Defendant United States knew or should have known that Defendant Calvert, and officers Ramos, Henry, Bartolo, and Naryan, amongst others, were engaged in these activities and intentionally placed Plaintiff C.C. in greater risk of harm and/or failed to act in a manner that protected Plaintiff C.C. from harm.

150. This conduct has caused Plaintiff C.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

### PRAYER FOR RELIEF

151. Plaintiff C.C. prays for judgment against Defendant, and each of them, as follows:

(a) An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff C.C. in an amount to be determined at trial;

(b)   An award to Plaintiff C.C. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)   For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff C.C. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 4, 2026

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
   EmilyRose Johns

GOLDEN LAW

By: /s/ *Deborah M. Golden*
   Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*